Sarah McTYRE, Plaintiff,

v.

The BROWARD GENERAL MEDICAL CENTER, Drs. Kirkley, Gilbert & McDaniel, P.A., William H. Kirkley, M.D., G.C. McDaniel, M.D. and John Does, Nos. 1 through 20, Defendants.

Civ. A. Nos. 90–2343 (MHC), 90–1549 (MHC).

United States District Court, D. New Jersey.

Oct. 24, 1990.

---

Drs. Kirkley, Gilbert & McDaniel, P.A. and William H. Kirkley, M.D. and G.C. McDaniel, M.D.

## OPINION

COHEN, Senior District Judge:

The issue presented in this case is whether a district court should dismiss an action, rather than transfer it, where (1) the cause of action would be timely filed under the choice of law and internal law of the state in which this court sits, (2) there is no personal jurisdiction in this court, and (3) the action would be time-barred under the law of the state in which the prospective transferee court sits. The case comes before us on defendants' Motion to Dismiss for lack of personal jurisdiction and *forum non conveniens*, and plaintiff's Cross Motion for Change of Venue to transfer this case to federal court in Florida. For the foregoing reasons, we hold that the action must be dismissed.

## I. BACKGROUND

Plaintiff, Sarah McTyre, a New Jersey citizen, brings the present claim sounding in negligence and/or medical malpractice [1] allegedly committed during her birth on April 18, 1970 at the location of defendant, The Broward General Medical Center ("Broward"), a hospital located in the State of Florida. Defendant, Drs. Kirkley, Gilbert & McDaniel, P.A. ("the Association"), is a Professional Association licensed to do business in the State of Florida. Defendants William H. Kirkley, M.D. and G.C. McDaniel, M.D. (collectively "the physician defendants") are doctors residing in and authorized to practice medicine in the State of Florida. Defendants John Does, Nos. 1 through 20 are unidentified employees of Broward, all residents of Florida. Plaintiff alleges that on April 18, 1970, the plaintiff's mother, Ann M. McTyre, was admitted to Broward for delivery of her daughter. The physician defendants were the

April & Maudsley by Mary J. Maudsley, Linwood, N.J., for plaintiff.

Krusen Evans and Byrne by James L. Barlow and Robert S. Foster, Collingswood, N.J., for defendant Broward General Medical Center.

Lomell, Muccifori, Adler, Ravaschiere, Amabile & Pehlivanian by Dominic Ravaschiere, Toms River, N.J., for defendants

1. Although claims for medical malpractice in New Jersey are now referred to as medical negligence, we use the terms synonymously throughout this opinion.

treating obstetricians for plaintiff's mother. Generally, plaintiff maintains that each of the defendants are jointly and severally liable for negligently delaying the delivery by five minutes and for administering an unnecessary anesthetic which resulted in a permanent and incurable learning disability.

An action was originally filed in the New Jersey Superior Court, Law Division, Cape May County, and was removed by defendants to this Court under Civil Action No. 90–2343. Shortly thereafter, plaintiff erroneously filed an identical complaint in this Court which is pending under Civil Action No. 90–1549. All defendants have moved to dismiss both actions for lack of personal jurisdiction and *forum non conveniens.* In response, plaintiff filed a Cross–Motion to transfer this case to an appropriate federal court in the State of Florida, pursuant to 28 U.S.C. section 1404(a). In response to plaintiff's Cross–Motion, defendants reiterate their contention that personal jurisdiction is lacking, and request the Court to exercise its discretion and dismiss the complaint.

## II. DISCUSSION

### A. In Personam Jurisdiction

■ By virtue of Federal Rule of Civil Procedure 4(e), jurisdiction in this diversity case is governed by New Jersey's longarm statute, N.J.Sup.Ct.R. 4:4–4(c)(1), which provides for service to the outer limits of due process. Under *International Shoe* and its progeny, due process requires that a non-resident defendant have "certain minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Moreover, in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court held that the role of foreseeability is "not the mere likelihood that a

product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* at 295, 100 S.Ct. at 566.

None of the defendants has *any* contacts with the State of New Jersey. Plaintiff's residence is the sole connection the parties in this case have with New Jersey. It is uncontested that Broward is a medical facility operated by the North Broward Hospital District located in Broward County, Florida; the Hospital District is a taxing entity that was created by state legislation; Broward operates exclusively within the geographic boundaries established by the state legislature, and is prohibited from conducting business outside of these limits; it does not provide services within New Jersey; it does not solicit business in New Jersey; and it has neither agents nor offices in New Jersey. Moreover, all witnesses of whom defendants are aware are located in Florida, as are all of the medical records and other documentary evidence.

It is clear that this Court may not exercise *in personam* jurisdiction, over any defendant, within the constraints of due process. This conclusion does not mandate dismissal, however, since a district court may transfer venue even where the transferring court lacks jurisdiction. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). We will thus evaluate whether transfer is proper in this case.

### B. Transfer

#### 1. The Applicable Statute

■ Plaintiff, without contesting defendants' assertion of lack of personal jurisdiction, requests us to transfer this case to a federal court in Florida. Initially, we must determine which of the federal transfer statutes is applicable in a case such as this, where personal jurisdiction is found to be lacking, but venue is otherwise proper. Plaintiff has requested transfer, pursuant to 28 U.S.C. section 1404(a), which provides:

## § 1404. Change of venue

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (West 1976). Defendants maintain that 28 U.S.C. sections 1406(a) or 1631 are the appropriate sections where jurisdiction is lacking. Section 1406(a) provides:

### § 1406. Cure or waiver of defects

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

*Id.* § 1406(a). In 1982, Congress enacted section 1631, which provides:

### § 1631. Transfer to cure want of jurisdiction

Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ... and the action ... shall proceed as if it had been filed ... [in] the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

*Id.* § 1631 (West Supp.1990).

As indicated above, venue is clearly proper in this case inasmuch as New Jersey is the state where the sole plaintiff resides. *See* 28 U.S.C. § 1391. Therefore, although the result will usually be the same under either statute, section 1404(a), read with *Goldlawr,* governs as between sections 1404(a) and 1406(a), where personal jurisdiction is lacking although venue is proper. *See generally,* 15 C. Wright, A. Miller & E.

Cooper, *Federal Practice and Procedure* § 3827, at 263–66 (2d ed. 1986).[2]

Although section 1631, on its face, makes no distinction between subject matter jurisdiction and personal jurisdiction, the legislative history indicates that the section was only intended to apply in cases where no subject matter jurisdiction exists in the transferor court. *See* 1A J. Moore, W. Taggart, A. Vestal, J. Wicker & B. Ringle, *Moore's Federal Practice,* ¶ 0.346[9], at 4440 n. 8 citing S.Rep. No. 97–275, 97th Cong., 2d Sess. 11, *reprinted in,* 1982 U.S. Code Cong. & Admin.News 11, 21); *Levy v. Pyramid Co. of Ithaca,* 687 F.Supp. 48, 51 (N.D.N.Y.1988); *Nose v. Rementer,* 610 F.Supp. 191, 192 n. 1 (D.Del.1985).[3] Accordingly, since this case involves lack of personal jurisdiction, section 1631 is inapplicable and we thus apply section 1404(a).

2. Prejudice to Plaintiff in Dismissing This Action in Light of Florida's Statute of Limitations

■ It is clear that plaintiff's claim, had it been brought in a Florida forum, would have been time-barred under the applicable Florida statute of limitations. Florida has amended this statute several times. Under the most current amendment, actions sounding in medical malpractice have a two year limitations period accruing from the date the incident occurred, or within two years from discovery of the malpractice, but in no event shall the action be commenced after four years from the date of the incident. *Fla.Stat.* § 95.11(4)(b) (West 1990). In case of fraud, concealment, or intentional misrepresentation, the limitations period is extended two years forward, but in no event to exceed seven years from the date of the incident. *Id.* The law existing at the time of the alleged malpractice in this case (1970),[4] provided for a four

---

**2.** Courts, however, routinely transfer pursuant to section 1406(a) where there is no personal jurisdiction even though venue is proper. *See, Dubin v. U.S.,* 380 F.2d 813 (5th Cir.1967). Because of the similarity between 1404(a) and 1406(a), courts have often treated the sections the same, or have transferred pursuant to both sections.

**3.** *But see, Ross v. Colorado Outward Bound School, Inc.,* 822 F.2d 1524, 1526–27 (10th Cir. 1987) (transfer pursuant to section 1631 in diversity case where there was no personal jurisdiction).

**4.** *See Foley v. Morris,* 339 So.2d 215 (Fla.1976) (amendments to medical malpractice statute of limitations should not be retroactively applied

year limitations period for malpractice claims. *Id.* § 95.11(6) (1969).[5]

In *Goldlawr, Inc. v. Heiman, supra,* the plaintiff erroneously filed an antitrust action against several defendants in the United States District Court for the Eastern District of Pennsylvania. Upon defendants' Motion to Dismiss, the district court held that, although there was no personal jurisdiction, the court would transfer the case to the appropriate district court in New York pursuant to section 1406(a). At the time the case was filed in Pennsylvania, the case would have been timely had it been filed in the proper forum. However, by the time the case was transferred, the statute of limitations had expired, and had the court dismissed the case, plaintiff's cause of action would have been barred. The U.S. Supreme Court, in affirming the decision of the district court, held that section 1406(a) was broad enough to authorize transfer in that case. The Court reasoned:

> When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitations would otherwise apply. The filing itself shows the proper diligence on the part of the plaintiff which such statutes of limitations were intended to insure. If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Par-

ker aptly characterized as 'time-consuming and justice-defeating technicalities.' *Goldlawr,* 369 U.S. at 467, 82 S.Ct. at 916. *See also, Ross v. Colorado Outward Bound School, Inc.,* 822 F.2d 1524 (10th Cir.1987) (same result under section 1631).

Defendant maintains that "the interests of justice" militate in favor of dismissal rather than transfer since this case is distinguishable from cases such as *Goldlawr* and *Ross* in that plaintiff's cause of action would have been barred in Florida at the time the action was initiated in New Jersey, and thus plaintiff would not be prejudiced by dismissal. This position is supported by *Cote v. Wadel,* 796 F.2d 981 (7th Cir.1986). In that case, the plaintiff, a Wisconsin resident, instituted an action against a Michigan attorney and his law firm, a professional corporation incorporated in Michigan, for professional malpractice arising out of the attorney's representation of plaintiff in Michigan. The district court dismissed the action for lack of personal jurisdiction, and denied plaintiff's motion to transfer under section 1404(a), even though the statute of limitations had since run. Judge Posner, writing for the Seventh Circuit panel, affirmed the district court and noted that the plaintiff's heavy penalty was justified since the plaintiff's mistake was "elementary:"

> [T]he mistake was elementary. Elementary prudence would have indicated to [plaintiff's] lawyer that he must file a protective suit in Michigan because there was only a slight probability of obtaining personal jurisdiction in Wisconsin over the defendants.... The proper penalty

unless the legislative intent to provide retroactive effect is express, clear, or manifest).

5. The Florida legislature has explicitly stated its legislative intent in this area. *Fla.Stat.* § 766.201 provides, in part:

> **766.201. Legislative findings and intent**
> (1) The Legislature makes the following findings:
> (a) Medical malpractice liability insurance premiums have increased dramatically in recent years, resulting in increased medical care costs for most patients and functional unavailability of malpractice insurance for some physicians.
> (b) The primary cause of increased medical malpractice liability insurance premiums has

been the substantial increase in loss payments to claimants caused by tremendous increases in the amounts of paid claims.
> (c) The average cost of defending a medical malpractice claim has escalated in the past decade to the point where it has become imperative to control such cost in the interests of the public need for quality medical services.
> (d) The high cost of medical malpractice claims in the state can be substantially alleviated by requiring early determination of the merit of the claims, by providing for early arbitration of claims, thereby reducing delay and attorney's fees....

*Id.*

for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one. *Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir.1980) (*per curiam*), upheld a refusal to transfer a case in circumstances like those of the present case. We adhere to *Brown* and remind plaintiffs and their counsel that they must determine where the plaintiff can get personal jurisdiction over the defendant before, not after, the statute of limitations runs; otherwise they court disaster. If the result in the present case seems harsh, that is because the costs to [plaintiff] are palpable while the benefits are largely invisible. But the benefits are not trivial; litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction.

*Id.* at 985. *Accord, Hapaniewski v. City of Chicago Heights*, 883 F.2d 576 (7th Cir. 1989).

Although the Seventh Circuit's reasoning is persuasive in the instant case, which is factually similar to *Cote*,[6] the Seventh Circuit cases precede the recent Supreme Court *Ferens* decision.

3. Significance of *Ferens*

In *Ferens v. John Deere Co.*, — U.S. —, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), the plaintiff relied on *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) which held that federal courts exercising diversity jurisdiction, apply the choice of law rules of the forum state. The plaintiff was able to circumvent his home state's statute of limitations by instituting an action in a state which had favorable choice of law rules and a liberal statute of limitations, and then transferring the suit back to plaintiff's home state. The Supreme Court held that the transferee state, which otherwise would have barred plaintiff's claim because of that state's statute of limitations, was now obligated to apply the statute of limitations of the transferor state.

A similar result would be reached if *Ferens* compelled a Florida court, upon transfer, to apply the law of this forum. Under New Jersey's domicile-driven choice of law rule, New Jersey would apply its statute of limitations. *See Warner v. Auberge Gray Rocks Inn, LTEE*, 827 F.2d 938 (3d Cir. 1987) (Pollak, J.) (applying New Jersey law). New Jersey's statute of limitations for medical malpractice claims, in turn, is tolled until the plaintiff reaches the age of twenty-one. N.J.Stat. § 2A:14–21 (West 1987). Thus, plaintiff's claim is timely under New Jersey law notwithstanding the fact that the events giving rise to the claim all occurred in Florida, over twenty years ago.[7] Therefore, we must determine whether transfer is appropriate in light of *Ferens*.

In *Ferens*, the plaintiff was a farmer who was injured on his farm in Pennsylvania while using equipment manufactured by defendant, John Deere & Co., a Delaware corporation with its principal place of business in Illinois. The applicable statute of limitations in Pennsylvania for tort actions was two years. After three years, plaintiff timely filed a breach of contract and breach of warranty action in the United States District Court for the Eastern District of Pennsylvania, basing jurisdiction on diversity of citizenship. In that same year, plaintiff filed another diversity suit against defendant in the Southern District of Mississippi for the tort claims. Mississippi had a six-year statute of limitations. Under Mississippi choice of law rules, Pennsylvania substantive law would control the personal injury claim, but a Mississippi court would apply Mississippi's statute of limitations. Shortly after filing the Mississippi tort claim, plaintiff moved to transfer the case to the Eastern District of Pennsylvania pursuant to section

---

6. In fact, Judge Posner's reasoning and admonition is even more compelling in this case since the Florida statute of limitations had run prior to the initiation of the instant action.

7. While Florida has expressed its interest in decreasing medical malpractice premiums, *see* note 4, *supra,* New Jersey's domicile-driven choice of law rule is based on the state's significant interest in compensating its citizens. *See Warner*, 827 F.2d at 941–42.

1404(a). Defendants did not oppose the motion and the court ordered the transfer to Pennsylvania. Once the action was transferred, the tort claim was consolidated with the pending contract and warranty claims, and defendant moved to dismiss.

Plaintiff, relying on *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), maintained that the Pennsylvania district court should apply the Mississippi statute of limitations. *Van Dusen* held that, when a defendant successfully transfers a case, pursuant to section 1404(a), the transferee court must apply the law of the transferor court. *See id.* The Pennsylvania district court held that *Van Dusen* did not apply since the plaintiff initiated the transfer, not the defendant. The Third Circuit affirmed. The Supreme Court, however, reversed, and held that, regardless of who initiates a transfer under section 1404(a), the transferee forum must apply the law of the transferor court. *Ferens*, 110 S.Ct. at 1279.

The Court reasoned that the same three policies underlying *Van Dusen* also apply when plaintiff initiates a transfer, namely that: "[f]irst, § 1404(a) should not deprive parties of state law advantages that exist absent diversity jurisdiction. Second, § 1404(a) should not create or multiply opportunities for forum shopping. Third, the decision to transfer venue under § 1404(a) should turn on considerations of convenience and the interest of justice rather than on the possible prejudice resulting from a change of law." *Id.* Although the plaintiff in *Ferens* was allowed to forum shop, the Court noted that, even without section 1404(a), plaintiffs already had an opportunity to forum shop and 1404(a) does no more than change venue. "Diversity jurisdiction did not eliminate these forum shopping opportunities; instead, under *Erie*, the federal courts had to replicate them." *Ferens*, 110 S.Ct. at 1282.

It is apparent, therefore, that the instant case is distinguishable in that plaintiff lacks personal jurisdiction over defendants.

Because plaintiff could not exercise personal jurisdiction over defendants in the New Jersey state court, this is not a case where 1404(a) and the *Ferens* principle would do no more than replicate forum shopping opportunities already available to plaintiff. If *Ferens* compelled the transferee court to apply the law of the transferor court in this instance, we would actually increase the plaintiff's state law advantage, create and multiply opportunities for forum shopping, and finally, cause decisions to transfer venue under section 1404(a) to turn on prejudice resulting from a change of law, rather than on considerations of convenience and the interest of justice. Under *Ferens*, although an opportunity for forum shopping exists, plaintiffs are at least limited in shopping for forums in which jurisdiction can be exercised over the defendant. Admittedly, this may encompass many states in the case of a national corporation which does business in several states. However, because *Goldlawr* permits a court to entertain a section 1404(a) motion even where no personal jurisdiction exists,[8] *Ferens* cannot be read to allow plaintiffs to bootstrap an otherwise defeated claim by selecting the most favorable law from *any* of the fifty states and transfer it to a federal court in which jurisdiction can be maintained. Unlike the result in *Ferens*, a plaintiff would be able to maintain an action in federal court which could not be maintained in any state court. Such a result would transcend the purposes underlying the federal transfer statutes, the *Erie* doctrine and *Ferens*. Indeed, it has been the rule prior to *Ferens* that the law of the transferee forum governs when no personal jurisdiction exists in the transferor forum. *See, e.g., Davis v. Louisiana State University*, 876 F.2d 412, 413 (5th Cir.1989); *Plowman v. U.S. Department of the Army*, 698 F.Supp. 627, 639 (E.D.Va.1988); *Weber v. McDonalds System of Europe, Inc.*, 660 F.Supp. 10, 13 (D.Del.1985). *See also, Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 164–65 (3d Cir. 1980), *rev'd on other grounds*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)

---

**8.** Additionally, as discussed above, a court could transfer under section 1631 even where no sub-

ject matter jurisdiction exists.

("when there has been an interstate transfer without personal jurisdiction, the transferor state's choice of law does not apply to that defendant," application of transferee law would violate due process). It is apparent from the reasons underlying *Ferens* that the Court did not intend to disturb this rule.

We therefore conclude that *Ferens* is inapposite in cases where the prospective transferor court has no personal jurisdiction. Because the Supreme Court did not intend to disturb the prior rule that the law of the transferee forum governs where no personal jurisdiction exists in the transferor forum, it is apparent that transfer in this case would be futile to plaintiff since her claim has long since expired.

### III. CONCLUSIONS

For the foregoing reasons, we hold that the interest of justice compels us to dismiss, rather than transfer this case. Accordingly, all defendants' Motions to Dismiss shall be granted under Civil Nos. 90–2343 and 90–1549 in their entirety, and plaintiff's Cross–Motion to Transfer shall be denied.